FILED
 2014 Aug-14  AM 09:59
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **LEON D. WALLACE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Civil Action No. CV-13-S-2116-J |
| | ) |
| **CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,** | ) ) ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Leon Wallace, commenced this action on November 20, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying his claim for a period of disability, disability insurance, and supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinions of claimant's treating physician and the medical expert who testified during the administrative hearing. Upon review of the record, the court concludes that these contentions are without merit, and the Commissioner's decision should be affirmed.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. The ALJ is not required to accept a conclusory statement from a medical source — even a treating source — that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d). Social Security regulations also provide that, in considering what weight to give *any* medical opinion, the Commissioner should evaluate: the extent of the examining or treating relationship

between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

**A.    Medical Expert Testimony**

First, claimant asserts that the ALJ did not properly consider the testimony of Dr. Darius Ghazi, the orthopedic surgeon who testified as a medical expert during the administrative hearing. Dr. Ghazi did not personally examine or treat claimant; instead, he reviewed the medical evidence to determine whether claimant "has a medically determined impairment and listing or an RFC."[1] Dr. Ghazi opined that, while claimant did meet any of the listings for orthopedic impairments, he did suffer from the medically determined impairment of chronic pain syndrome. Dr. Ghazi noted that claimant alleged

> a lot of knee pain, hand pain, and there's no x-ray to report on the records indicating the extent of the degenerative changes of the knee; whether he needs knee replacement or could be treated with surgery. My guess is that he should consult in conservative treatment because at age 42, usually the joints do not wear out to the extent that they need

---

[1] Tr. 56.

replacement.[2]

After studying claimant's records, including the medical source statements from the consultative examiner and treating physician, Dr. Ghazi stated the following with regard to claimant's residual functional capacity:

> His treating physician, Dr. McQuill, indicated that he cannot lift more than 10 pounds frequently and cannot climb ladders or engage in any kind of risky type of occupation. Again, I don't know what — you know pain is subjective, your honor. You cannot measure it, nor can you feel it, you rely on what the patient says. He has been treated with a lot of pain medicine and pain management and there is not sufficient evidence in the record indicating that he could be treated surgically or anything could be corrected surgically, by an orthopedic surgeon. And so his condition is basically chronic pain syndrome; unable to conservative management [*sic*].[3]

The ALJ assigned great weight to Dr. Ghazi's opinion that claimant did not meet a listing, because Dr. Ghazi was "uniquely qualified to give an opinion on whether the claimant's impairments meet a listing because he has had the opportunity to review the entire record and to listen to the claimant's testimony at the hearing," and because Dr. Ghazi "specialized in orthopedics and is familiar with the Social Security Administration's disability programs."[4] The ALJ did not cite Dr. Ghazi's testimony when he was discussing claimant's residual functional capacity.

Claimant's first challenge to the ALJ's analysis of Dr. Ghazi's testimony is

---

[2] *Id.*
[3] Tr. 57.
[4] Tr. 26-27.

that, as a non-examining, reviewing physician, Dr. Ghazi is analogous to a state agency medical consultant, whose opinion should be afforded only little weight. That argument simply is not supported by applicable authority. To the contrary, Social Security regulations provide that the opinions of state agency consultants are entitled to substantial consideration. *See* 20 C.F.R. §§ 404.1527(e)(2)(i) & 416.927(e)(2)(i) (stating that, while the ALJ is not bound by the findings of a State Agency consultant, the ALJ should consider such a consultant to be both "highly qualified" and an "expert" in Social Security disability evaluation). *See also Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) ("The Secretary was justified in accepting the opinion of Dr. Gordon, a qualified reviewing physician, that was supported by the evidence, and in rejecting the conclusory statement of Dr. Harris, a treating physician, that was contrary to the evidence."); *Surber v. Commissioner of Social Security Administration*, No. 3:11–cv–1235–J–MCR, 2013 WL 806325, *5 (M.D. Fla. March 5, 2013) (slip copy) ("State agency medical consultants are non-examining sources who are highly qualified physicians and experts in Social Security disability evaluation, and their opinions may be entitled to great weight if supported by evidence in the record.").

Claimant next asserts that Dr. Ghazi's testimony "was not persuasive for the purpose of determining an RFC or even of reconciling or distinguishing the

conflicting opinions . . . ."[5]  The court agrees with that statement, as a factual matter. Even though Dr. Ghazi stated during the administrative hearing that he had sufficient information to offer an opinion about claimant's residual functional capacity, he did not actually offer such an opinion.  He mentioned the restrictions imposed by claimant's treating physician, but he did not state whether he agreed with those restrictions, and he did not offer his independent opinion about claimant's residual functional capacity.[6]  Accordingly, claimant is correct that it would have been improper for the ALJ to rely upon Dr. Ghazi's testimony in evaluating claimant's residual functional capacity.  That does not serve as a basis for challenging the ALJ's decision, however, because the ALJ did not base his residual functional capacity finding on Dr. Ghazi's opinion.

      Claimant then makes the following argument:

> The ALJ gap filled for the ME in determining the medically determinable and severe impairments of record . . . and did not pose a hypothetical which was based in any way on the ME testimony. The ALJ's decision lacks any statement according weight to the ME Opinion except as to whether a Listing was met.[7]

That argument is difficult to decipher.  To the extent claimant is arguing that Dr. Ghazi's assessment was inadequate to support the ALJ's finding of severe

---

[5] Doc. no. 9 (claimant's brief), at 6.
[6] *See* Tr. 57.
[7] Doc. no. 9 (claimant's brief), at 7.

impairments, there is no basis for that argument. Dr. Ghazi stated that claimant's medically determinable impairment was chronic pain syndrome due to his knee injury. That statement is consistent with the ALJ's finding that claimant experienced the severe impairments of "opioid-dependent chronic pain syndrome; right patella chondromalacia; localized, primary osteoarthritis of the right lower extremity; internal derangement of the right knee with likely torn lateral meniscus; mild left knee osteoarthritis with small joint effusion; and borderline intellectual abilities."[8] Claimant has not contested that he suffered from these severe impairments, nor has he argued that the ALJ should have found additional impairments.

To the extent claimant is arguing that the ALJ should not have reached a residual functional capacity finding without a medical source statement from Dr. Ghazi about his functional limitations, that argument also is unpersuasive. The ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision*. *Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis supplied).

---

[8] Tr. 24.

Furthermore, claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record in this case was sufficient to give substantial support to the ALJ's decision, even in the absence of a residual functional capacity finding by Dr. Ghazi.

Claimant's final argument is that Dr. Ghazi's opinion is not supported by substantial evidence. Presumably, claimant is specifically referring here to Dr. Ghazi's opinion that claimant did not satisfy any of the orthopedic listings. Claimant focuses on Dr. Ghazi's comment that "there's no x-ray to report on the records indicating the extent of the degenerative changes of the knee; whether he needs knee replacement or could be treated with surgery."[9] According to claimant, that statement is incorrect because Dr. Lloyd Dyas, an orthopedic specialist to whom claimant was referred on June 15, 2011, obtained x-rays, and his treatment records stated that the x-rays revealed "osteoarthritis of the lateral compartment patellofemoral joint" in the right knee.[10] Dr. Dyas's treatment notes also refer to a previous MRI, which "revealed abcess of the posterior horn of lateral meniscus."[11] Those records are not inconsistent with Dr. Ghazi's statements. First, Dr. Dyas's records contain only an

---

[9] Tr. 56.
[10] Tr. 455.
[11] Tr. 450.

x-ray *report* and summary; there is no indication that Dr. Ghazi was able to review the x-rays themselves. Further, Dr. Ghazi testified that there was no x-ray that indicated the *extent* of the degenerative changes in claimant's knee. Even the x-ray report discussed in Dr. Dyas's records states only that osteoarthritis was present; it did not describe the *extent* of the condition. Finally, even if Dr. Ghazi had made an incorrect statement about the medical evidence in the record, that error would not have rendered his opinion unsupported by substantial evidence. Despite claiming to not have been able to view any of claimant's x-rays, Dr. Ghazi nonetheless assessed claimant with chronic pain syndrome as a result of his knee impairment, and the ALJ accounted for that condition by imposing limitations on claimant's residual functional capacity.

**B.     Treating Physician**

Dr. Farouk Raquib, claimant's primary physician, completed a Physical Capacities Evaluation form on March 2, 2010. He indicated that claimant could lift a maximum of five pounds occasionally or less. He could not sit or stand at all during a workday. He could frequently operate motor vehicles, and he could occasionally perform fine manipulation and reaching movements. However, he could never push or pull with his arms or legs, climb, balance, perform gross manipulation, bend, stoop, work around hazardous machinery, or work around pulmonary irritants like dust,

allergens, or fumes.[12]  On a Clinical Assessment of Pain form, Dr. Raquib indicated that claimant experienced pain to such an extent as to be distracting to the adequate performance of daily activities or work, that physical activity would greatly increase claimant's pain to such a degree as to cause distraction from or abandonment of tasks, and that the side effects of claimant's medication could be expected to be severe and to limit his effectiveness due to distraction, inattention, and drowsiness.  Dr. Raquib also indicated that claimant had an underlying medical condition consistent with the pain he experienced.[13]

The ALJ assigned some weight, but not controlling weight, to Dr. Raquib's assessment.  He found that there was good cause for rejecting any portions of the assessment that were inconsistent with his residual functional capacity finding because:

> Dr. Raquib's own treatment notes fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and Dr. Raquib did not specifically address this weakness.  Rather, Dr. Raquib apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed uncritically to accept as true most, if not all, of what the claimant reported.  Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.  Moreover, Dr. Raquib's opinion contrasts sharply with the other medical evidence of record, which he did not have the benefit of reviewing.  In fact, Dr. Raquib's opinion is without

---

[12] Tr. 398.
[13] Tr. 399-400.

substantial support from the other evidence of record, which obviously renders it less persuasive.[14]

The ALJ's decision is in accordance with applicable law and supported by substantial evidence of record, including Dr. Raquib's own treatment notes and evidence from other medical providers. One piece of evidence with which Dr. Raquib's assessment is inconsistent is the report of Dr. Alexandre Todorov, a neurologist who conducted a consultative examination on July 21, 2011. Dr. Todorov acknowledged that claimant experienced a knee problem that was "the limiting factor in his ability to work" and recommended evaluation by an orthopedist. Even so, Dr. Todorov assessed few functional limitations. On a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form, Dr. Todorov indicated that claimant could continuously lift and carry up to 20 pounds, frequently lift and carry up to 50 pounds, and occasionally lift and carry up to 100 pounds. He could sit for three hours at a time, and for a total of seven hours, during an eight-hour work day. He could stand for two hours at a time, and for a total of five hours, during an eight-hour work day. He could walk for one hour at a time, and for a total of four hours, during an eight-hour work day. Claimant did not require the use of an assistive device to ambulate. He could continually perform all hand movements with both hands, including reaching, handling, fingering, feeling, pushing, and pulling. As a

---

[14] Tr. 30-31.

result of claimant's knee problems, he could only occasionally use his feet to operate foot controls. He could frequently balance, but he could only occasionally climb, stoop, kneel, crouch, and crawl. He had no environmental restrictions or visual restrictions, and he could perform all reasonable activities of daily living, like shopping, traveling, ambulating without assistance, walking outdoors, using public transportation, climbing a few stairs, preparing food, caring for personal hygiene, and sorting, handling, and using paper.[15]

The ALJ assigned Dr. Todorov's opinion some weight, because it was consistent with Dr. Todorov's clinical findings and the other evidence of record, including claimant's daily activities. However, he did not assign the assessment controlling weight because, "in light of Dr. Raquib's opinion, . . . Dr. Todorov did not adequately consider the claimant's subjective complaints."[16]

Claimant asserts that Dr. Todorov's assessment is internally inconsistent, because Dr. Todorov acknowledged that claimant had a knee problem that needed to be evaluated by an orthopedic specialist, but he nonetheless failed to assess any significant functional limitations. Claimant does not explicate that argument any further, but presumably his point is that it was wrong for the ALJ to consider whether Dr. Raquib's assessment was inconsistent with Dr. Todorov's, because Dr. Todorov's

---

[15] Tr. 465-70.
[16] Tr. 31.

report is itself internally inconsistent and therefore cannot be relied upon for any reason. The court disagrees, and finds that the ALJ's consideration of the reports of both Dr. Raquib and Dr. Todorov was supported by the record. The ALJ essentially acknowledged the inconsistency in Dr. Todorov's report, and he accounted for it by assigning only limited weight to Dr. Todorov's opinions. Another reason for assigning limited weight to Dr. Todorov's opinion was that it did not adequately account for all the limitations assessed *by Dr. Raquib*. In light of these facts, it cannot be said that the ALJ improperly considered the opinion of either Dr. Raquib or Dr. Todorov.

**C.     Conclusion and Orders**

Based on the foregoing, the court concludes the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE this 14th day of August, 2014.

_____
United States District Judge